UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 3:24-cr-261-HES-SJH
                                      18 U.S.C. § 371
CAESAR ALEXANDER SILVA II

## INFORMATION

The United States Attorney charges:

### COUNT ONE

A. Introduction

At all times material to this Information:

1. Medicare was a federally funded health care benefit program that provided medical coverage for persons age 65 and over and for persons under age 65 who were disabled.

2. Medicare was a "health care benefit program" as defined in 18 U.S.C. § 24(b) and a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f).

3. Medicare was divided into four parts: A, B, C, and D. Part B provided supplementary medical insurance benefits that covered certain doctors' services, outpatient care, preventive services, and medical supplies.

4. Each Medicare beneficiary was identified with a unique beneficiary identifier number ("BIN"). These BINs were used, among other things, to determine

a beneficiary's eligibility for Medicare benefits, and to submit claims to Medicare seeking reimbursement for covered benefits, items, and services. Two types of BINs established under Title 42, United States Code, Chapter 7, subsection XVIII, were Health Insurance Claim Numbers ("HICNs") and Medicare Beneficiary Identifiers ("MBIs").

5. HICNs were typically comprised of the beneficiary's social security number and often included one or more additional letters. In 2015, Congress passed the Medicare Access and CHIP Reauthorization Act ("MACRA"), which mandated the phase-out of the use of social security numbers in the assignment of BINs.

6. From April 4, 2022, until the declared end of the COVID-19 public health emergency on May 11, 2023, Medicare covered and paid for OTC ("over the counter," i.e., not prescribed or ordered by a physician) rapid antigen COVID-19 tests for beneficiaries with Medicare Part B, at no cost to the beneficiaries. However, Medicare regulations provided that Medicare would pay for such tests only if a beneficiary requested the tests.

7. SWL Services LLC was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida, that was enrolled with Medicare as a participating provider that would provide clinical laboratory services to Medicare beneficiaries.

8. The defendant, CAESAR ALEXANDER SILVA II, and co-conspirator K.K.W. owned and operated Meta Laboratory Consulting LLC, which was

incorporated on or about March 1, 2022, and which had its principal place of business in Lantana, Florida.

B. Charge

Beginning in or about January 2023 and continuing through in or about June 2023, in the Middle District of Florida, and elsewhere, the defendant,

CAESAR ALEXANDER SILVA II,

did knowingly and willfully combine, conspire, confederate, and agree with K.K.W. and others, both known and unknown to the United States Attorney, to commit an offense against the United States, that is:

(1) to knowingly and willfully solicit and receive remuneration, by kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), and

(2) without lawful authority, to knowingly and willfully, purchase, sell, distribute, and arrange for the purchase, sale, and distribution of beneficiary identification numbers under Title 42, United States Code, Chapter 7, subsection XVIII, that is, HICNs and MBIs, in violation of 42 U.S.C. § 1320a-7b(b)(4).

3

### C. Manner and Means

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

1. Beginning in approximately January 2023, the defendant and K.K.W., through Meta Laboratory Consulting, engaged "marketers" to illegally obtain Medicare beneficiary identifying information.

2. The defendant and K.K.W. entered into "consulting" agreements with medical service providers pursuant to which the defendant and K.K.S. introduced the "marketers" to the providers.

3. The "marketers" agreed to supply the providers with lists of Medicare beneficiaries and their identifying information, including their Medicare beneficiary identification number, to facilitate the providers' shipping of COVID-19 tests to the identified beneficiaries, none of whom had requested the tests.

4. The providers billed Medicare for the tests and then paid both Meta Laboratory Consulting and the "marketers" a set dollar amount per beneficiary, but the providers paid this amount only if a claim submitted on behalf of a beneficiary was reimbursed by Medicare.

5. The actions of the defendant and K.K.W. caused the submission of approximately 152,000 false and fraudulent claims to Medicare, which resulted in reimbursements from Medicare for that period totaling approximately $14,405,700.

### D. Overt Acts

In furtherance of the conspiracy and to effectuate the objects thereof, the following overt acts, among others, were committed within the Middle District of Florida and elsewhere:

1. In or about January 2023, K.K.W. discussed with the owners and operators of SWL Services the possibility of SWL Services providing over-the-counter COVID-19 test kits to Medicare beneficiaries.

2. In or about February 2023, the defendant, on behalf of Meta Laboratory Consulting, entered into an agreement in which SWL Services agreed to pay Meta Laboratory Consulting $29 for each COVID-19 test kit processed and shipped by SWL Services.

3. In or about February 2023, the defendant and K.K.W. recruited "marketers" to sell Medicare beneficiary identifying information to SWL Services.

4. In or about March and April 2023, the "marketers" agreed to sell and SWL Services agreed to buy the identifying information for $15 or $25 per identified beneficiary.

5. In or about May 2023, K.K.W., on behalf of Meta Laboratory Consulting, entered into a renewed agreement in which SWL Services agreed to pay Meta Laboratory Consulting $34.80 for each COVID-19 test kit processed and shipped by SWL Services.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1. The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of a conspiracy to violate 42 U.S.C. § 1320a-7b(b)(1) and/or 42 U.S.C. § 1320a-7b(b)(4), in violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture of approximately $1,583,145, which represents the proceeds the defendant obtained from the offense.

4. If any of the property described above, as a result of any act or omission of a defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

ROGER B. HANDBERG
United States Attorney

By: _____
ARNOLD B. CORSMEIER
Assistant United States Attorney

By: _____
MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division